IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AARON KAUFFMAN | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  07-CV-5043 |
| PAMELA FRANZ, ET AL. | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Defendants Pottstown Memorial Medical Center and Pottstown Hospital Company, LLC.,'s Motion for Judgment on the Pleadings (Doc. No. 23) and the "Joinder Motions" of Defendants Dr. Pamela Franz, M.D., and Dr. Stephen Spencer, M.D., (Doc. Nos. 24, 25). The Defendants have asked the Court to determine whether they are entitled to judgment as a matter of law, based on the pleadings, as to Plaintiff's sole federal claim,[1] which arises under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. For the following reasons, the Court will grant Defendants Franz and Spencer's Joinder Motions[2] and deny Defendants Pottstown Memorial Medical Center and Pottstown Hospital Company, LLC.,'s Motion for Judgment on the Pleadings.

---

[1] The Plaintiff's Complaint contains eight causes of action including negligence claims and claims under Pennsylvania's Wrongful Death and Survival Acts.

[2] The Joinder Motions are granted only in so far as they seek dismissal of the EMTALA claims against Defendants Franz and Spencer. The Court, however, will continue exercising supplemental jurisdiction over the remaining claims against Defendants Franz and Spencer because those claims are "so related to the [pending claims against Defendants Pottstown Memorial Medical Center and Pottstown Hospital Company, LLC, over which the Court has original jurisdiction,] that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367.

## BACKGROUND

At approximately 5:00 a.m. on [March] 23, 2007,[3] John Kauffman ("Kauffman") contacted a friend to take him to the hospital. (Compl. ¶ 21.) He was complaining of chest pain, difficulty breathing, clamminess, and swollen feet. (Id. ¶ 21.) Kauffman was fifty-one years old. (Id. ¶ 4.) By 5:39 a.m., Kauffman arrived in the emergency room at Defendant Pottstown Memorial Medical Center,[4] seeking treatment for chest pains, breathing difficulties, anxiety, clamminess, and swollen feet. (Id. ¶ 22.) Kauffman's vital signs were the following: Temperature: 96.8, Pulse: 87, Respirations: 32, and Blood pressure: 132/88. (Id. ¶ 23.) "He was anxious, alert, oriented x3, and cooperative." (Id. ¶ 23.) His skin was warm and dry, and his lungs were clear. (Id. ¶ 24.)

At 5:45 a.m., Kauffman was seen by Defendant Dr. Franz, who ordered a BAT (Behavioral Avoidance Test) and a urine drug screen. (Id. ¶ 25.) At 6:00 a.m., Dr. Reeves, who is not a defendant, performed a multidiscplinary psychiatric assessment on Kauffman. (Id. ¶ 26.) His report indicated that Kauffman was brought to the emergency room by a female friend for complaints of "chest pain, high anxiety, hyperventilation, [and] sleeplessness." (Id. ¶ 27.) Dr. Reeves recommended that Kauffman set up an appointment with a psychiatrist and follow up with his primary care physician. (Id. ¶ 31.) No assessment of Kauffman's chest pain was ever performed. (Id. ¶ 33.) No electrocardiogram or blood work was ordered. (Id. ¶ 34.) No

---

[3] It appears that the Plaintiff made an error in dating the occurrence based on his own Motion in Opposition to Defendants' Motion for Judgment on the Pleadings, (Doc. No. 26), the Defendants' Answers, (Doc. Nos. 13, 14), the Motion. for Judgment on the Pleadings, (Doc. No. 23 ), and the Joinder Motions (Doc. Nos. 24, 25).

[4] Defendant Pottstown Hospital Company, LLC d/b/a and a/k/a Pottstown Memorial Medical Center. (Compl. ¶ 9.)

continuous cardiac monitoring was performed. (Id. ¶ 34.) No ongoing evaluation of his vital signs was conducted. (Id. ¶ 34.)

At 9:30 a.m., John Kauffman was given one mg. of a sedative, intramuscularly, after his urine drug screen came back negative. (Id. ¶¶ 38-39.) He was discharged at 9:35 a.m., and his vital signs upon discharge were the following: Pulse: 85, Respirations: 24, and Blood pressure: 140/106. (Id. ¶ 40.) His blood pressure was elevated, and he remained very anxious. (Id. ¶ 41.) No clinical impression was documented at the time of discharge. (Id. ¶ 44.)

Fewer than seven hours later, at approximately 4:00 p.m., Kauffman was found lying on his bed. (Id. ¶ 45.) He was blue in the face, and his heart was not beating. (Id. ¶ 45.) He was transported by an ambulance to Pottstown Memorial Medical Center with an admitting diagnosis of cardiac arrest. (Id. ¶ 46.) He was pronounced dead upon arrival. (Id. ¶ 47.) According to the autopsy, the cause of death was arteriosclerotic cardiovascular disease, hypertrophic cardiomyopathy, and pneumonitis. (Id. ¶ 48.)

Approximately one month later, on April 27, 2007, an addendum was added to Kauffman's chart, which documented his early morning visit to the hospital on March 23, 2007. The addendum read:

> Sent back to me to put Diagnosis on chart. Pt was signed out to me c[sic] [with] Dx [diagnosis] of Anxiety, Discharge instructions written by P. Franz and on chart. Waiting for urine to be obtained then D/C [discharged] per instructions. Anxiety is diagnosis at time.

(Id. ¶ 49.) Under "Clinical Impressions," the diagnoses of anxiety and hypertension were added. (Id. ¶ 50.)

The Plaintiff, the administrator of Kauffman's estate, alleges a violation of EMTALA by

all of the Defendants, under the heading "First Cause of Action Emergency Medical Treatment and Active Labor Act EMTALA Violation." (Id. ¶ 70.) All of the Defendants have answered the Complaint (Doc. Nos. 13, 14). Now, they move that the Court dismiss the EMTALA claims under Rule 12(c) of the Federal Rules of Civil Procedure.

## STANDARD

The same legal standard that applies to motions filed under 12(b)(6) applies to motions filed under 12(c). See Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim."); Turbe v. Government of V.I., 938 F.2d 427, 428 (3d Cir. 1991) (applying 12(b)(6) standard to defendant's 12(c) motion). "Most of the authority on Rule 12(b)(6) applies to Rule 12(c)." 2 Moore's Federal Practice, § 12.38 (Matthew Bender 3d ed.). When reviewing the pleadings, "'[t]he facts presented [therein] and the inferences to be drawn therefrom [must be viewed] in the light most favorable to the nonmoving party.'" Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir.1988)). Judgment will not be granted under Rule 12(c) unless "'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" Id.

**ANALYSIS**

Although EMTALA was enacted by Congress to address the problems associated with "patient dumping," the statute and case law applying the Act make clear that its protections flow to everyone, not just the indigent or uninsured.[5] See 42 U.S.C. § 1395dd; Gatewood v. Washington Healthcare Corp., 933 F.3d 1037, 1040-41 (D.C. Cir. 1991) (affirming the dismissal of plaintiff-widow's EMTALA claim on the rationale that allegations of mis-diagnosis are not actionable under EMTALA, while rejecting the district court's rationale that the Act's protections did not reach the deceased, who was insured).  In order to recover under EMTALA, a plaintiff may proceed under a screening, stabilization, or stabilization/transfer theory.  Here, the Plaintiff is proceeding under both a screening and a stabilization theory.

The Plaintiff has pleaded facts sufficient to show that Defendants Pottstown Memorial Medical Center and Pottstown Hospital Company, LLC, are subject to EMTALA's civil enforcement provisions.  See 42 U.S.C. §§ 1395cc and 1395dd; (Compl. ¶¶ 14-16,18).  However, the Plaintiff has not pleaded any facts to show that Defendants Franz and Spencer are subject to EMTALA, nor could he.[6]  While EMTALA provides for both public and private enforcement of its provisions, the civil enforcement subsection limits private enforcement to claims against "participating hospitals."  Compare  42 U.S.C. §1395dd(d)(1) (providing for civil money penalties against participating hospitals and physicians) with 42 U.S.C. §1395dd(d)(2) (providing

---

[5] The Third Circuit Court of Appeals has yet to rule on the scope of EMTALA liability; however, Torretti v. Paoli Hospital, Slip Copy, 2008 WL 268066 (E.D.Pa. Jan. 29, 2008) is currently pending at docket number 08-1525. Torretti involves a failure to stabilize claim. Summary judgment was granted in favor of the defendants.

[6] This issue was not addressed by any of the parties.

for civil enforcement against participating hospitals only); see also Eberhard v. City of Los Angeles, 62 F.3d 1253, 1256-57 (9th Cir. 1995) (rejecting plaintiff's theory of an implied private right of action against physicians under EMTALA, and stating that, "[o]ur holding today is consistent with every appellate court [e.g. the D.C., Fourth, Eighth, and Tenth Circuit Courts of Appeals] that has decided whether EMTALA allows a private right of action against physicians") (internal citations omitted); Davis v. Twp. of Paulsboro, 424 F. Supp. 2d 773, 779 (D.N.J. 2006) (dismissing EMTALA claims against individually named physicians and stating that "EMTALA only creates a private right of action against hospitals, not individual physicians"). Therefore, the EMTALA claims against Defendants Franz and Spencer, who are both physicians, must be dismissed and their Joinder Motions granted only in so far as they moved that the Court dismiss the EMTALA claims. (Doc. Nos. 24, 25.)

I.      EMTALA    -        Screening

EMTALA requires a covered hospital "to provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists," when "any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition." 42 U.S.C. § 1395dd(a). This subsection forms the basis of the EMTALA "screening" requirement. Although the statute does not define what an "appropriate medical screening examination" is, the caselaw is clear that the "essence of the requirement is that there be some screening procedure, and that it be administered even-handedly." Cruz-Queipo v. Hosp. Espanol Auxilio Mutuo de Puerto Rico, 417 F.2d 67, 70 (1st Cir. 2005) (quoting Correa v. Hosp. San Francisco, 69 F.3d 1184, 1189 (1st Cir. 1995)); see also

Nolen v. Boca Raton Cmty. Hosp. Inc., 373 F.3d 1151, 1155 (11th Cir. 2004) ("So long as the hospital gave to [plaintiff] the same quality screening that it would have given a similarly situated outpatient, there is no violation of EMTALA."); Marshall v. East Carroll Parish Hosp. Serv. Dist., 134 F.3d 319, 322 (5th Cir.1998) ("[A]n EMTALA 'appropriate medical screening examination' is not judged by its proficiency in accurately diagnosing the patient's illness, but rather by whether it was performed equitably in comparison to other patients with similar symptoms."); Vickers v. Nash Gen. Hosp. Inc., 78 F.3d 139, 143 (4th Cir. 1996) (EMTALA obligates hospitals to "'apply uniform screening procedures to all individuals coming to the emergency room.'") (quoting Matter of Baby K, 16 F.3d 590, 595 (4th Cir. 1994)); Davis, 424 F. Supp. 2d at 778-79 ("[T]he 'key requirement' of a hospital's duty under § 1359dd(a) 'is that a hospital apply its standard of screening uniformly to all emergency room patients, regardless of whether they are insured or can pay. The Act does not impose any duty on a hospital requiring that screening result in a correct diagnosis.'") (quoting Power v. Arlington Hosp. Ass'n., 42 F.3d 851, 856 (4th Cir. 1995)).

      In support of his screening theory, the Plaintiff alleges, pertinently, that the Defendants:[7]

> Failed to conduct a full and complete medical screening examination . . . [t]reated Kauffman disparately from other similarly situated patients . . . [d]eparted from their standard medical screening examination of patients with complaints and symptoms similar to those of John Kauffman . . . [f]ailed to provide a level of screening examination reasonably calculated to identify critical conditions that may be afflicting symptomatic patients uniformly to all those who present with substantially similar conditions . . . [f]ailed to adhere to their own standard policies, procedures[,] protocols, care paths and/or critical pathways for patients entering the Emergency Department in similar medical circumstances . . . [and f]ailed to perform a medical screening examination within the capabilities of the [D]efendant hospitals' Emergency Department and ancillary

---

[7] References to "Defendants" hereinafter refer only to Defendants Pottstown Memorial Medical Center and Pottstown Hospital Company, LLC.

services.

(Compl. ¶ 70(a),(c)-(d),(f),(h),(i).) In other words, the Plaintiff alleges that the hospital somehow treated Kauffman differently from other patients with similar conditions or departed its standard procedures or both.

Accepting the Plaintiff's factual allegations as true and granting him all reasonable inferences therefrom, the Court concludes that the Plaintiff pleaded sufficient facts to state a claim under EMTALA's screening theory against Defendants Pottstown Memorial Medical Center and Pottstown Hospital Company, LLC.

## II. EMTALA - Stabilization

The stabilization requirement of EMTALA arises from subsection (b) of the statute, which reads:

> If any individual . . . comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either – (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

42 U.S.C. § 1395dd(b)(1). A plain reading of subsection (b) makes clear that liability on a stabilization theory turns on whether the hospital knew of a plaintiff's emergency medical condition. Indeed, there is ample case law to support the proposition that actual knowledge is a condition precedent to a stabilization claim.[8] See, e.g., Jackson v. East Bay Hosp., 246 F.3d 1248, 1256-57 (9th Cir. 2001) (adopting the "actual detection" rule and noting that it "comports

---

[8] Again, the Third Circuit has not yet ruled on the scope of EMTALA liability, though Torretti v. Paoli Hospital, Slip Copy, 2008 WL 268066 (E.D. Pa. Jan. 29, 2008), which involves a failure to stabilize claim, is currently pending before the Third Circuit, at docket number 08-1525.

with the law of five other circuits, which requires a showing of actual knowledge of the emergency medical condition by the hospital as a condition precedent to the stabilization requirement"); Marshall, 134 F.3d at 324-25 (summary judgment on behalf of defendants affirmed on stabilization claim where hospital had no knowledge of latent emergency medical condition).

Here, the Plaintiff alleges that either Kauffman or his friend who took Kauffman to the hospital told members of the hospital staff about Kauffman's chest pain. (Compl. ¶ 22.) Chest pain is considered to be an emergency medical condition under EMTALA.[9] Further, the Plaintiff alleges that Dr. Reeves' report reflects that Kauffman was brought to the emergency room for complaints about chest pain. (Id. ¶ 27.) Accepting as true Plaintiff's allegations and granting him all reasonable inferences therefrom, the Court concludes that the Plaintiff has pleaded sufficient facts to state a claim under EMTALA's stabilization theory against Defendants Pottstown Memorial Medical Center and Pottstown Hospital Company, LLC. See Cruz-Querpo, 417 F.3d at 71-72 (drawing an inference that hospital knew of chest pain complaints, based on the stage of proceedings and moving papers of the parties, and determining that the inference was sufficient to defeat a motion for summary judgment on a stabilization claim).

An appropriate Order follows.

---

[9] An emergency medical condition is defined as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in – (i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd(e)(1)(A).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AARON KAUFFMAN | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO. 07-CV-5043 |
| PAMELA FRANZ, ET AL. | : | |
| | : | |
| Defendants | : | |

**ORDER**

AND NOW, this 6th day of March, 2009, upon consideration of the Defendants' Motion for Judgment on the Pleadings (Doc. No. 23) and Joinder Motions (Doc. No. 24, 25) as well as the Plaintiff's responses thereto, it is hereby ORDERED that the Motion for Judgment on the Pleadings, (Doc. No. 23), is DENIED and the Joinder Motions, (Doc. Nos. 24, 25), are GRANTED only in so far as the Defendants Franz and Spencer moved the Court to dismiss the EMTALA claims against them.[10]

BY THE COURT:

*/s/ Thomas M. Golden*
THOMAS M. GOLDEN, J.

---

[10] The Court will continue exercising supplemental jurisdiction over the remaining claims against Defendants Franz and Spencer because those claims are "so related to the [pending claims against Defendants Pottstown Memorial Medical Center and Pottstown Hospital Company, LLC, over which the Court has original jurisdiction,] that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367.