IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| AARON KAUFFMAN | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO. 07-CV-5043 |
| PAMELA FRANZ, et al. | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM OPINION AND ORDER

**Golden, J.**                                                                                  **March 25, 2010**

Before the Court are a Motion for Reconsideration and Motion to Stay filed by Defendants Pottstown Memorial Medical Center and Pottstown Hospital Company (hereinafter "Defendants.") Defendants ask the Court to reconsider its September 24, 2009 Order denying their motion for summary judgment as to Plaintiff's claims under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), or, in the alternative, to certify this matter for an interlocutory appeal, with an accompanying stay. For the forgoing reasons, Defendants' Motions are denied.

**Factual Background**

For clarity's sake, the Court will reproduce the facts as stated in its September 24, 2009 Memorandum Opinion. Plaintiff's decedent, John Kauffman, contacted his friend Linda Curry at approximately 5:00 a.m. on March 23, 2007 to ask her for a ride to the hospital. (Pl.'s Counterstatement of Material Facts ¶ 1). Mr. Kauffman told Ms. Curry that he was experiencing chest pain and trouble breathing, and believed he was having a heart attack. (*Id.*) Mr. Kauffman reported feeling clammy, and having difficulty putting his shoes on his feet, which had swollen.

(*Id.*)  Ms. Curry took Mr. Kauffman to Defendants' Emergency Room.  Once at the Emergency Room, Mr. Kauffman was seen by triage at 5:39 a.m. and admitted with a diagnosis of "difficulty breathing."  (*Id.* ¶ 2).  Mr. Kauffman's chief complaint was recorded by the triage nurse as an "anxiety attack." (*Id.* ¶ 3).

At 5:45 a.m., defendant Pamela Franz, M.D., an attending physician in the PMMC emergency room, examined Mr. Kauffman.  (*Id.* ¶ 4).  At 5:53 a.m., pursuant to his chief complaint of anxiety, Dr. Franz cleared Mr. Kauffman to proceed to a psychiatric assessment, which was performed by mental health worker Will Poskitt.  (*Id.* ¶ 6-8).  Mr. Poskitt documented that Mr. Kauffman came to the ER "complaining of chest pains, high anxiety, hyperventilation, sleeplessness." (*Id.* ¶ 8).  Mr. Poskitt informed Dr. Franz that Mr. Kauffman complained of chest pain.  (*Id.* ¶ 10).  Dr. Franz testified that she asked Mr. Kauffman if he had chest pain, and he responded that he did not. (*Id.* ¶ 11-13).  Dr. Franz did not record Mr. Kauffman's response to her inquiry, or further evaluate his cardiac health.  (*Id.* ¶ 11-13).

Mr. Kauffman received an injection of Ativan to treat his anxiety, and was discharged.  (*Id.* ¶ 26, 28).  Within six hours of his departure from the hospital, Mr. Kauffman died from a myocardial infarction. (*Id.* ¶ 33).

**Defendants' Motion for Reconsideration**

The purpose of a motion for reconsideration is to correct manifest errors of law or fact, or to present newly discovered evidence.[1]  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  A court may alter or amend its judgment if a movant establishes one of the following:

---

[1]  Defendants characterize this as a motion under Rule 54(b).  The analysis for such a motion is the same as that for a motion for reconsideration under Rule 59(e).  *Keel-Johnson v. Amsbaugh*, 2009 U.S. Dist. LEXIS 57342, at *2 (M.D. Pa. July 7, 2009).

"(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café, by Lou-Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999). A motion for reconsideration is not an appropriate vehicle for relitigating points of disagreement between a party and the court. *Abu-Jamal v. Horne,* 2001 WL 1609761, at *9 (E.D. Pa. Dec. 18, 2001).

Defendants do not suggest that new evidence has come to light. Defendants are proceeding under the theory that the Third Circuit's opinion in *Torretti v. Main Line Hospitals*, 580 F.3d 168, is an intervening change in controlling law that this Court has not considered; and that this Court has made a clear error of factual interpretation in its September 24, 2009 Order and Opinion. The Court regrets any confusion or effort that the September 24, 2009 Opinion may have caused; suffice it to say that the Court's opinion was written with *Torretti* in mind, and in concert with the law as announced in *Torretti*. Moreover, as the Court hopes the instant opinion will make clear, the Court did not misinterpret the factual record in the manner articulated by Defendants in their Motion for Reconsideration. Because the September 24, 2009 Opinion does not conflict with *Torretti*, and because the Opinion contained no clear error of fact or law, Defendants' motion for reconsideration is denied.

The Third Circuit's *Torretti* opinion, which was released just weeks before this Court issued its order denying summary judgment to Defendants on the EMTALA claim, primarily concerned the "stabilization" prong of EMTALA and whether the statute can be triggered by outpatient visits. *Id.* at 174, 178. Mrs. Torretti came to Lankenau Hospital following a routine appointment at Paoli Hospital related to her second, high-risk pregnancy. *Id.* at 170, 171. While

she was at Paoli Hospital, Mrs. Torretti did not perceive from her interaction with or observation of the staff that her condition was an emergency. *Id.* at 171  For example, when asked if an ambulance was necessary to transport Mrs. Torretti from Paoli Hospital to Lankenau, her doctor responded in the negative. *Id.* at 172.  Her visit to Lankenau was motivated not by a perceived emergency, but by a need for longer-term monitoring of her unborn baby. *Id.*  After her arrival at Lankenau, Mrs. Torretti's condition began to deteriorate quickly. *Id.*  She was immediately rushed into surgery, where she gave birth to a son with severe brain damage. *Id.*

The Torrettis brought EMTALA and common law claims against both hospitals and several doctors involved in Mrs. Torretti's care. *Id.* at 170.  The district court granted summary judgment on the EMTALA claim in favor of the defendants because the Torrettis "did not offer sufficient evidence to raise a reasonable inference that defendants...knew Mrs. Torretti presented a medical emergency." *Id.* at 172.  The Court of Appeals agreed that the Torrettis failed to provide enough evidence to raise a disputed issue regarding the defendants' actual knowledge of Mrs. Torretti's emergency condition. *Id.* at 178.

In the current motion, Defendants argue that "[t]his Court's decision diverges from *Torretti* as to the sufficiency of the evidence presented by a plaintiff of a doctor's knowledge of a medical condition in an EMTALA case, necessary to raise a disputed issue on summary judgment." (Def.'s Br. at 2).  To the contrary, both this Court[2] and the *Torretti*[3] court stated that, for liability to exist under EMTALA's stabilization prong, a hospital must have actual knowledge

---

[2] "A hospital's duty to stabilize extends only to those conditions it knows a patient to have." Mem. Op. and Order P. 3 (Sept. 24, 2009).

[3] "As the District Court concluded, the requirement of actual knowledge is the key to this issue." 580 F.3d at 178.

of a patient's emergency condition. Defendants also argue that the *Torretti* plaintiffs put forth more evidence of defendants' actual knowledge than Plaintiff has in the case at bar. Defendants have misapprehended the Third Circuit's opinion, which specifically noted that "there is no evidence that <u>any</u> of the hospital staff at Paoli...knew that Mrs. Torretti's condition was an emergency." *Id.* at 178 (emphasis supplied).

This case is easily distinguished from *Torretti*. Mrs. Torretti came to the hospital for a routine appointment; neither she nor her providers suspected that an emergency was unfolding at first. *Id.* In the instant case, in contrast, the decedent John Kauffman came to Defendants' emergency room because he was having chest pain, as he told his friend Linda Curry. As noted in the preceding paragraph, there was no evidence of any kind in *Torretti* that any hospital staff member was aware of the potential emergency. In the instant case, documents show that at a minimum, mental health worker Will Poskitt was aware of John Kauffman's complaint of chest pain. The only evidence that Mrs. Torretti could offer in support of her theory that her providers were aware of her emergency condition was a stray, overheard remark ("it had a score of two") that she misinterpreted as a comment on her baby's biophysical profile. *Id.* at 179 n. 16. In the case at bar, in contrast, there is no question that Mr. Kauffman communicated to Mr. Poskitt that he was suffering from chest pain, and that Mr. Poskitt relayed that information to Dr. Franz.

Here, the Court must clarify the factual underpinnings of its opinion on Defendants' Motion for Summary Judgment. The Court is aware that Mr. Kauffman made his complaints regarding chest pain to Linda Curry outside of the hospital, and that Ms. Curry never communicated with hospital employees. The Court is also aware that Mr. Kauffman spoke with hospital worker Will Poskitt just once, and that their encounter took place before Mr. Kauffman's

interview with Dr. Franz. The Court understands that Mr. Poskitt informed Dr. Franz of Mr. Kauffman's complaint of chest pain, and that it is Dr. Franz's contention that, when she asked Mr. Kauffman if he had chest pain, he answered that he did not. Nonetheless, the Court concludes that Mr. Kauffman's discussion with Mr. Poskitt, and Mr. Poskitt's records of Mr. Kauffman's complaints of chest pain, create an issue of material fact regarding Defendants' knowledge of Mr. Kauffman's emergency condition.

With this evidence in mind, there is no question that, even after *Torretti*, this Court cannot dispose of the EMTALA claim at summary judgment. To do so, the Court would have to weigh the documentary evidence of Mr. Kauffman's complaint of chest pain against Dr. Franz's testimony, and choose to credit Dr. Franz. The Court cannot perform this function without invading the province of the factfinder.

The Court declines to consider Defendants' arguments regarding Plaintiff's ability to prove that the decedent was treated "in a non-uniform manner and or differently from similarly situated patients" with regard to screening. (Def.'s Br. at p. 8). The Court reviewed these same points during oral argument and in the Defendants' Motion for Summary Judgment. Defendant cannot plausibly argue that *Torretti*, which concerned only the stabilization prong of EMTALA, requires re-analysis of these issues. They are thus not appropriate subject matter for a Motion for Reconsideration.

As to Defendants' argument that EMTALA is not a federal malpractice statue, the Court agrees, as stated on page 3 of its Opinion ("EMTALA does not create a federal medical malpractice cause of action"). As *Torretti* noted, the "actual knowledge" requirement is what distinguishes an EMTALA claim from a medical malpractice claim. *Torretti*, 580 F.3d at 178.

An issue of material fact regarding Defendants' actual knowledge of decedent's chest pain remains the central issue in the instant action; until that issue of material fact is resolved, this is still an EMTALA case.

**Defendants' Request for an Interlocutory Appeal**

Defendants have asked that, if the Court will not reconsider its Order on the motion for summary judgment, it certify its Order to permit an interlocutory appeal. An interlocutory appeal is appropriate when an order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Although there is no question that the Court's September 24, 2009 Order involved a controlling question of law, it does not satisfy the other two elements of the test for an interlocutory appeal.

First, there is not "substantial ground for difference of opinion" as to the Order. As explained above, this Court's Order was consistent with *Torretti*, which itself adopted the law as interpreted by sister circuits. *Torretti*, 580 F.3d at 178. Defendants also argue that an appeal is warranted because of the "dearth of EMTALA decisions in this Circuit." )Def.'s Br. at 10). The fact that there is an issue of first impression for the Third Circuit, however, does not justify an interlocutory appeal. *Larsen v. Senate of Comm. of Pa.*, 965 F. Supp. 607, 609 (M.D. Pa. 1997).

Moreover, an interlocutory appeal will only delay resolution of this case. The EMTALA claim is one among many claims at issue; trial or settlement of this case is inevitable. Defendants' request for an interlocutory appeal, and related Motion to Stay this action pending the outcome of the Third Circuit's opinion, is therefore denied.

An appropriate Order follows.